NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3684-22

ERNEST BOCK & SONS-
DOBCO PENNSAUKEN
JOINT VENTURE,

      Plaintiff-Appellant,

v.

TOWNSHIP OF
PENNSAUKEN and
TERMINAL
CONSTRUCTION
CORPORATION,

      Defendants-Respondents.

_____

APPROVED FOR PUBLICATION

November 30, 2023

APPELLATE DIVISION

Argued October 30, 2023 – Decided November 30, 2023

Before Judges Gilson, Berdote Byrne and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-1878-23.

John F. Palladino argued the cause for appellant (Hankin Sandman Palladino Weintrob & Bell, attorneys; John F. Palladino and Colin G. Bell, on the brief).

Richard Wayne Hunt argued the cause for respondent Township of Pennsauken (Parker McCay, PA,

attorneys; Richard Wayne Hunt and Sean T. Fannon, on the brief).

Nicholas J. Zaita argued the cause for respondent Terminal Construction Corporation (Peckar & Abramson, PC, attorneys; Nicholas J. Zaita and Brian Christopher Glicos, on the brief).

The opinion of the court was delivered by

BISHOP-THOMPSON, J.A.D.

This appeal presents an issue of first impression — whether a joint venture formed for the sole purpose of bidding on a public contract is required to be registered as a contractor under the Public Works Contractor Registration Act (PWCRA), N.J.S.A. 34:11-56.48 to - 56.57, at the time of the bid submission. Ernest Bock & Sons, Inc. and Dobco, Inc. Pennsauken Joint Venture (Joint Venture) appeal from a July 28, 2023 order upholding the Township of Pennsauken's (Township) decision to reject its bid and award the contract to the next lowest responsible bidder, Terminal Construction Corporation (Terminal). Having considered the governing principles and the applicable statutes, we hold that the PWCRA applies to a joint venture and requires registration at the time of bid submission to local governments. Accordingly, we affirm the trial court's order.

I.

On March 23, 2023, the Township solicited sealed bids for the "New Public Library and Municipal Complex" (Project) pursuant to the Local Public Contracts Law, N.J.S.A. 40A:11-1 to - 60 (LPCL). The LPCL governs public contracts with local governments, including any county, municipality, and non-State "board, commission, committee, authority[,] or agency" other than a board of education. N.J.S.A. 40A:11-2(1). Local governments must grant a contract to the "lowest responsible bidder." N.J.S.A. 40A:11-4. The "lowest responsible bidder or vendor" means the bidder: (a) whose response to a request for bids offers the lowest price and is responsive; and (b) who is responsible. N.J.S.A. 40A:11-2(27). "'Responsive' means conforming in all material respects to the terms and conditions, specifications, legal requirements, and other provisions of the request." N.J.S.A. 40A:11-2(33).

The Township's notice to bidders included detailed bid specifications and numerous forms, which were required to be completed and submitted as part of any bid. The bid submissions were due on May 4, 2023 at 10:30 a.m. The Township issued two addendums to the bid notice, which were received by Joint Venture on April 19 and May 2, 2023.

The notice informed bidders that compliance with the business registration law, N.J.S.A. 52:32-44, was required as set forth in the bid specifications. The notice further advised bidders the "Township Council

reserve[d] the right to reject all bids or to waive minor informalities as may be permitted by law."

The Township also included supplementary general conditions to the notice. Section 13.8.1 notified each bidder compliance with the Prevailing Wage Act (PWA), N.J.S.A. 34:11-56.25 to - 56.47, was required.

Relevant to this appeal, subsection 13.8.1.2 of the bid specifications explained that the PWCRA, which "became effective April 11, 2000[,] . . . require[d] that all contractors, . . . register with the New Jersey Department of Labor and Workforce Development [DOL] at the time of bidding or engaging in public works contracts that exceed the prevailing wage threshold." Additionally, "[n]o [c]ontractor shall bid on any contract for public work as defined in section 2 of P.L.1963, c.150 (C.34:11-56.26) unless the [c]ontractor is registered pursuant to this Act."

On May 10, Ernest Bock & Sons, Inc. and Dobco, Inc. signed a joint venture agreement, forming Joint Venture for the specific purpose of bidding on, and if awarded, performing construction of the Project. Its bid included a statement of corporate ownership that identified the entity as a "JV partnership," the bid bond, consent of surety, acknowledgement of addenda, and subcontractor form as required by N.J.S.A 40A:11-23.2. Joint Venture, however, did not submit a PWCRA registration certificate. Instead, it

submitted individual PWCRA registration certificates for Ernest Bock & Sons, Inc. dated April 2, 2022 and Dobco, Inc. dated May 3, 2022.

On May 11, the Township received and opened four bids, which disclosed Joint Venture was the lowest bidder and Terminal was the second lowest bidder. The Township forwarded both bids to its solicitor for compliance review and responsiveness to the bid specifications.

Five days later, on May 16, Terminal submitted a letter to the Township protesting Joint Venture's bid, contending there were material defects related to the statement of ownership and the specialty subcontractor certification forms. Terminal further contended Joint Venture's bid should be rejected because it was nonresponsive and not responsible; and therefore, Terminal was the lowest responsible bidder. A dispute emerged between Terminal and Joint Venture regarding whether the defects in Joint Venture's bid were material, and if so, whether the bid should be rejected.

In a June 14 letter from the DOL to the Township's solicitor, the DOL explained Joint Venture, as a bidder on the Project, would be "subject to the provisions of the PWA and the PWCRA." The DOL further explained "to bid or work on a project covered by the PWA, the bidder must be registered with the [DOL] under the [PWCRA]." According to the DOL, Joint Venture "ha[d] never been registered with the [DOL] to perform such work[,] and because it

ha[d] already bid on this project[,] it may be held in violation of the law." Further, Joint Venture's "performance of any work on this project while unregistered would constitute an additional violation of the law."

On June 15, the Township adopted Resolution No. 2023:215 awarding the contract to Terminal. The Township's resolution stated, in pertinent part:

> WHEREAS, the apparent low bid of [Joint Venture], in the amount of $27,285,000[], per the advice of Township counsel, contained material defects requiring the rejection of the bid as nonresponsive, including JV's failure to provide proof of [] JV's registration under the [PWCRA] . . . and as set forth in the [b]idding [s]pecifications; and
>
> WHEREAS, the [DOL] has advised Township counsel that the Department's position is that the JV is required to be registered under the Act in order to bid on, and perform work for, this Project; and
>
> WHEREAS, counsel for the Township then reviewed the second low bid, submitted by [Terminal] for $27,490,000[], and determined that Terminal's bid is compliant in all material, non-waivable respects.

Six days later, on June 22, Joint Venture registered as a contractor under the PWCRA. Shortly thereafter, on June 30, 2023, Joint Venture filed a verified complaint in lieu of prerogative writs and declaratory judgment against the Township and Terminal, seeking to enjoin and to overturn the bid award to Terminal.

6

On July 6, 2023, the trial court issued temporary restraints prohibiting the Township from proceeding with the bid award. The Township, joined by Terminal, filed an application to dissolve the temporary restraints.

At the hearing, Joint Venture argued that, although the joint venture was not registered under the PWCRA at the time the bid was submitted, each individual business entity that would be doing the work was registered under the PWCRA. The LPCL neither mandated registration nor imposed the additional requirement of registration under the PWCRA because registration is not one of the five "mandatory items" for bid submission. It also argued that Joint Venture was eligible to perform work on the Project based on the DOL letter because the agency could not disqualify a bid under the LPCL but could impose sanctions. Lastly, Joint Venture pointed to a 2019 Schools Development Authority (SDA) project awarded to bidders Terminal and Dinallo Construction Corporation (Dinallo), as an unregistered joint venture.

Following oral argument on July 28, 2023, the trial court denied Joint Venture's application for a preliminary injunction and granted the Township and Terminal's application to dissolve the temporary restraints but stayed its ruling pending appeal. The trial court concluded Joint Venture is a form of partnership under the public bidding laws and was required to be registered under the PWCRA at the time the bid was submitted to the Township. Citing

Fliegel v. Sheeran, 272 N.J. Super. 519, 524 (App. Div. 1994), the trial court noted "[t]he numerous cases which have applied partnership principles to joint ventures are reflective of the fact that in current usage, 'joint venture' refers to a particular kind of partnership, one for a limited purpose or for a limited duration, which like all other types of partnerships are subject to the uniform partnership law."  Further, the trial court concluded the Township's rejection of Joint Venture's bid and the award to Terminal was not arbitrary, unreasonable, or capricious.

We granted Joint Venture's motion to stay the award of the contract pending appeal.  This accelerated appeal ensued.

II.

We review the trial court's legal conclusions and issues of applicability and interpretation of the public contract and local finance laws de novo.  See In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 17 (2020).  We use a deferential standard of review for governmental decisions in bidding cases.  In re Protest of Award of On-Line Games Prod. & Operation Servs. Cont., Bid No. 95-X-20175, 279 N.J. Super. 566, 590 (App. Div. 1995).  "The standard of review on the matter of whether a bid on a local public contract conforms to specifications . . . is whether the decision was arbitrary, unreasonable[,] or capricious."  Ibid. (citing Palamar Constr. v. Twp. of Pennsauken, 196 N.J.

Super. 241, 250 (App. Div. 1983); Stano v. Soldo Constr. Co., 187 N.J. Super. 524, 534 (App. Div. 1983)).  If a public entity's decision is grounded rationally in the record and does not violate the applicable law, it should be upheld.  Ibid.

In the context of public bidding, the "function of [the trial c]ourt is to preserve the integrity of the competitive bidding process and to prevent the misapplication of public funds."  Marvec Constr. Corp. v. Twp. of Belleville, 254 N.J. Super. 282, 288 (Law Div. 1992); see also Barrick v. State, 218 N.J. 247, 258-59 (2014); In re Jasper Seating Co., Inc., 406 N.J. Super. 213, 222 (App. Div. 2009).

We begin our analysis by acknowledging the well-established principles governing public bidding disputes.  "[T]he statutory rule in New Jersey is that publicly advertised contracts must be awarded to 'the lowest responsible bidder.'"  Meadowbrook Carting Co. v. Bor. of Island Heights & Consol. Waste Servs., 138 N.J. 307, 313 (1994) (quoting N.J.S.A. 40A:11:6.1); see also N.J.S.A. 40A:11-4(a).  To be responsive, bids must not materially deviate from the specifications and requirements set forth by the local contracting unit.  Meadowbrook, 138 N.J. at 314.  "[A]ny material departure invalidates a nonconforming bid as well as any contract based upon it." Ibid.  (citing Twp. of Hillside v. Sternin, 25 N.J. 317, 323 (1957)).

The LPCL was created to ensure a fair, public, and competitive bidding process for the taxpayer's benefit. See generally, N.J.S.A. 40A:11-2(23). "[T]he statutes authorizing competitive bidding accomplish that purpose by promoting competition on an equal footing and guarding against 'favoritism, improvidence, extravagance, and corruption.'" Meadowbrook, 138 N.J. at 313 (citations omitted). The long-established judicial policy in applying the LPCL is "to curtail the discretion of local authorities by demanding strict compliance with public bidding guidelines." Ibid. (citation omitted). Consequently, "[p]ublic bidders should regard the specifications as requiring the submission of bids on the terms specified." Id. at 324. "Courts should not casually transform the mandatory requirement in [bid] specifications . . . into a polite request." Ibid. (citation omitted).

Under these principles, a public contract must be awarded "not simply to the lowest bidder, but rather the lowest bidder that complies with the substantive and procedural requirements in the bid advertisements and specifications." Ibid. (citing Twp. of Hillside 25 N.J. at 324); see also N.J.S.A. 40A:11-4(a). The bid specifications apply equally to all bidders, and any material departure from the bid specifications renders bids nonconforming and invalid. Hall Constr. Co. v. N.J. Sports & Exposition Auth., 295 N.J. Super. 629, 635 (App. Div. 1996). A governmental entity is without authority

to award a contract based on a bid containing a material deviation from the bid specifications. Meadowbrook, 138 N.J. at 314; see also Terminal Constr. Corp. v. Atl. Cnty. Sewerage Auth., 67 N.J. 403, 411 (1975). Thus, "a public entity may not waive any material departure from bid specifications or requirements of law, and is bound to reject a non-conforming bid with such defects." Serenity Contracting Grp., Inc. v. Bor. of Fort Lee, 306 N.J. Super. 151, 156 (App. Div. 1997).

The crux of this appeal is whether Joint Venture's omission of the PWCRA registration certificate was a material deviation from the Township's bid specifications. In challenging the Township's award to Terminal, Joint Venture, as the lowest bidder, "must stand or fall on its own entitlement to the contract." J. Turco Paving Contractor, Inc. v. City Council of Orange, 89 N.J. Super. 93, 100 (App. Div. 1965) (following William A. Carey & Co. v. Bor. of Fair Lawn, 37 N.J. Super. 159, 169 (App. Div. 1955) (internal quotation marks omitted)).

Joint Venture reprises the arguments presented before the trial judge: 1) there was no material deviation from the Township's bid specifications because the LPCL does not require registration of joint ventures, 2) the PWCRA does not bar unregistered entities from performing awarded contracts, 3) after an award of the contract to Joint Venture, any work it would perform could be

11

considered an "additional violation" of the statute subject to fines and penalties. We reject Joint Venture's contentions.

We first address Joint Venture's status as a legal entity. "[A] joint venture is an undertaking usually in a single instance to engage in a transaction of profit where the parties agree to share profits and losses." Wittner v. Metzger, 72 N.J. Super. 438, 444 (App. Div. 1962) (citations omitted). A joint venture is simply a single-purpose partnership, or an entity formed for a limited duration. Fliegel v. Sheeran, 272 N.J. Super. 519, 524 (App. Div.), certif. denied, 137 N.J. 312 (1994). A joint venture includes "some or all" of these elements: 1) a contribution by the parties of money, property, effort, knowledge, skill, or other assets to a common undertaking; 2) a joint property interest in the subject matter of the venture; 3) a right of mutual control or management of the enterprise; 4) an expectation of profit; 5) the right to participate in profits; and 6) limitation of the objective to a single undertaking. Ibid. at 444 (citations omitted).

We agree with the trial court's reasoning that Joint Venture's status was akin to a partnership. Here, the undisputed record shows a joint venture was formed for the sole purpose of bidding on the Project. The Joint Venture identified itself as a "JV partnership" on the corporate statement of ownership form and on all bid documents required under N.J.S.A. 40A:11-23. Moreover,

12

even if we do not consider Joint Venture a partnership, it is an "other legal business entity" within the meaning of N.J.S.A. 34:11-56.50.

Additionally, we reject Joint Venture's reliance on the concurrence in R.C.G. Const. Co., Inc. v. Mayor and Council of Bor. of Keyport, 346 N.J. Super. 58 (App. Div. 2001), for the proposition that "municipalities have neither the statutory authority nor the obligation to enforce the PWCRA" and assuming it was required to be registered under the PWCRA, the bid should have been awarded to Joint Venture because the DOL was prohibited from interfering with the contract award. We reject Joint Venture's contentions as inapposite. In R.C.G., we held that under N.J.S.A. 34:11-56.51, the subcontractor was required to register before it began performing work on the project, not before the general contractor submitted its bid proposal. Id. at 64-65. We also gave deference to the Department of Community Affairs (DCA), Division of Local Government Services, advisory notices to municipalities requiring a contractor's submission of a PWCRA registration certificate in response to bid notices, but not for "all named and known subcontractors." Id. at 66. Unlike the contractor bidder in R.C.G., Joint Venture was unregistered when its bid was submitted.

After our decision in R.C.G., the Legislature amended N.J.S.A. 34:11-56.51 to explicitly provide that "[n]o contractor or subcontractor . . . shall

engage in the performance of any public work subject to the contract, unless the contractor or subcontractor is registered pursuant to that act." Additionally, the PWCRA unequivocally states "no contractor shall bid on any contract for public work . . . unless the contractor is registered pursuant to this act." N.J.S.A. 34:11-56.51. The statute defines a contractor as "a person, partnership, association, joint stock company, trust, corporation, or other legal business entity . . . who enters into a contract which is subject to the New Jersey Prevailing Wage Act." N.J.S.A. 34:11-56.50.

Also, the "Local Finance Notice" issued by the DCA on November 1, 2021 "remind[ed]" municipalities of the PWCRA requirement that contractors working on public works projects covered under the PWA are to be registered with the DOL. The notice further advised municipalities that the PWCRA registration requirement applied to bidding on public works projects, stating: "A contractor must have its [p]ublic [w]orks [c]ontractor [r]egistration (PWCR) in place before responding to solicitations for bids on public works contracts subject to prevailing wage."

Applying those principles to the record, there is sufficient credible evidence to support the Township's conclusion that Joint Venture's bid was materially defective and, therefore, non-conforming and nonresponsive. The Township specified in unambiguous terms a registration certificate was

required under the PWCRA and business registration law, and the failure to comply with the statutes would be cause for rejection of the bid "as permitted by law." Joint Venture was not a holder of a registration certificate. Therefore, Joint Venture's "non-compliance was substantial and thus non-waivable"; and as such, no further inquiry was necessary because the bid was "non-conforming and a non-conforming bid [was] no bid at all." In re Protest, 279 N.J. Super. at 595; see also Hall Constr. Co., 295 N.J. Super. at 685.

We conclude Joint Venture's compliance with the LPCL was one of the factors in the bid submission requirements of the Township's bidding specifications and the governing law. Under these facts, we hold registration was a mandatory requirement; and as such, we do not reach the issue of whether the PWCRA or the PWA imposes a mandatory registration requirement on the LPCL. The bid specifications were clear, registration was required. In effect, Joint Venture asks us to make an exception to the PWCRA, even though the Township required compliance with the statute. We decline to do so because local governments need clarity in enforcing the LPCL and determining compliance with the PWCRA. The Legislature has been clear.

The Joint Venture, however, argues that its noncompliance was a mere technicality, and we should not apply the PWCRA as written. We reject this

15

argument because if the statute is to be changed, that is the province of the Legislature. Any other outcome creates uncertainty.

Joint Venture contends that Terminal and Dinallo bid on, and were awarded, an SDA public works contract as an unregistered joint venture under the PWCRA. We decline to address this argument because the award of the SDA contract and the record of that award are not before us. Therefore, we will not speculate on the facts of that 2019 award and we do not have the record to hold that the SDA award somehow estopped Terminal from making the bid challenge in this matter. Moreover, even if Terminal had submitted the bid as an unregistered joint venture in another matter, in this matter we are satisfied the joint venture principles and the statutes govern.

As noted above, we concluded Joint Venture did not submit a bid "at all." Nonetheless, for the sake of completeness, we address Joint Venture's contention the Township's refusal to vacate the award to Terminal was arbitrary, capricious, and unreasonable. That argument likewise fails. We conclude the Township's decision, as set forth in the bid notice, to require all bidders to comply explicitly with the PWCRA was sound based on the prevailing law. We see nothing arbitrary, capricious, or unreasonable about the Township requiring all contractors to submit bids in compliance with the PWCRA.

16

Joint Venture's bid did not meet a material requirement of the bid specifications; it was not "responsive" and thereby not the "lowest responsible bidder" under the LPCL. Consequently, the Township acted within its authority in rejecting Joint Venture's bid and its decision was not arbitrary, capricious, or unreasonable.

We discern no basis to reverse the trial judge's thoughtful and detailed ruling that the Township's rejection of Joint Venture's bid and award of the contract to Terminal was appropriate. We find no mistaken application of the law or an abuse of discretion.

To the extent we have not otherwise addressed the Joint Venture's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. Rule 2:11-3(1)(E).

Affirmed. We vacate our August 16, 2023 order staying the trial court's order pending this appeal.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION